## W. H. McNALLY v. THURLOW H. TAFT.[1]

January 13, 1922.

No. 22,508.

**Broker's commission—verdict not supported by evidence.**
> The evidence does not sustain a finding of the jury that the plaintiff procured a purchaser for certain lands of the defendants, and earned an agreed commission.

Action in the district court for Martin county to recover $600 commission upon a sale of real estate. The case was tried before Dean, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict for $651.90. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Allen, Seifert & Allen* and *C. W. Garfield,* for appellants.
*Haycraft & McCune,* for respondent.

DIBELL, J.

Action to recover a commission upon the sale of real estate. There was a verdict for the plaintiff and the defendants appeal from an order denying their motion for a new trial.

The defendants owned 280 acres of land near Granada in Martin county. There was one tract of 120 acres upon which there were buildings, and across the road a tract of 160 acres without buildings. The plaintiff wanted to negotiate the sale of the 120 acres, and the

[1]Reported in 186 N. W. 240.

defendants offered him $5 an acre if he procured a purchaser. He was not given an exclusive agency. It was understood that the defendants preferred to sell the whole 280 acres. They had the two tracts listed with others for sale as a whole.

On June 21, 1919, the plaintiff sent to the defendant Taft for signature a contract for the purchase of the 120 acres signed by one Honken, to whom he had been trying to sell the land. On June 24, 1919, Taft wrote the plaintiff stating that he would not accept the contract unless certain of its provisions were omitted. One of these required the defendants to assume any drainage tax levied between the date of the contract and the first of March following; another required them to complete certain tiling then in progress; and the other required them to furnish an abstract. The letter did not terminate negotiations. It rather suggested their continuance with the purpose of getting to an agreement.

On June 27, 1919, the plaintiff wrote Taft stating that he would personally guarantee any drainage tax assessed before March 1, 1920; that the tiling was so nearly completed that he did not see that there were any grounds for argument; and that the purchaser was satisfied with the copy of the abstract which had been furnished him. This letter was not an acceptance. It did not say that Honken would close on this basis. It was an argument against Taft's position on two of the points upon which he insisted, and in the nature of a suggestion that he should not be insistent upon them. On either the twenty-seventh or twenty-eighth Taft was at Granada. He had not received the letter. The plaintiff showed him a copy and had a talk with him. He says that he had had a conversation with Honken and that Honken agreed to take the land without any assumption by the vendors of ditch taxes or any obligation to complete the tiling or any obligation to furnish the original abstract; and that he communicated all this to Taft when he was there on June 27 or June 28. Honken testifies that he agreed to waive all the conditions imposed by Taft. He is not definite as to dates. On June 25 Taft wrote the plaintiff saying that the deal with Honken was off and that the farm was withdrawn from listing. On June 26 he wrote another letter returning the contract and stating that

the farm was not on the market. At this time Taft saw an opportunity of selling the whole 280 acres and evidently preferred following the opportunity to negotiating further with Honken. The plaintiff says that he does not think that he had received these letters at the time of the talk with Taft. He is not definite. Both should have been received in regular course at that time. The last one, which was registered, was received on the afternoon of the twenty-seventh and was receipted for by the assistant cashier of the bank of which the plaintiff was cashier. Taft denies any conversation of the purport which the plaintiff claims. His testimony is positive and direct. Nothing seems to have been said at the conversation mentioned of the letters of the twenty-fifth or twenty-sixth. The parties Taft had with him at Granada were prospective purchasers. Taft puts the date as June 28. There is considerable to support this view, and the plaintiff does not definitely deny it.

It is difficult to understand why the plaintiff should write the letter of June 27 and say what he did if as he claims Honken had agreed to Taft's terms. His testimony was positive, when a direct question was put to him, that Honken agreed to take the farm without the conditions to which Taft objected, and that he communicated to Taft what Honken said; but when he is asked what occurred between himself and Taft when he showed the letter of June 27 he fails to answer with the definiteness naturally expected. He did not testify in rebuttal in denial of Taft. The letters of June 25 and June 26 and the time of their receipt have some bearing. We do not now consider their effect. The date of Taft's last visit to Granada is of some importance. Whatever the date it seems that if the plaintiff had a purchaser in Honken, who had acceded to Taft's terms, he would have something definite to say when Taft was there taking purchasers out to buy the 280 acres. The evidence may ultimately make a question for the jury. With it so uncertain and indefinite and vague as it now is the verdict cannot stand.

The determining issue in the case is not an involved one. It is the evidence that is uncertain. We fear that the issue was not clear to the jury.

Order reversed.